**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**SEP 15 2025**

**JUDGE JORGE LUIS ALONSO**
**United States District Court**

UNITED STATES OF AMERICA

v.

RICARDO TELLO

No. 23 CR 426-3

Judge Jorge L. Alonso

## PLEA AGREEMENT

1.　　This Plea Agreement between the United States Attorney for the Northern District of Illinois, ANDREW S. BOUTROS, and defendant RICARDO TELLO, and his attorneys, CARLOS VERA and DANIEL YUKICH, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.　　The superseding indictment in this case charges defendant with conspiracy to possess with intent to distribute and distribute a controlled substance, namely, five kilograms or more of cocaine, in violation of Title 21, United States Code, Section 846 (Count One); possession with intent to distribute a controlled substance, namely, 5 kilograms or more of cocaine, in violation of Title 21, United States Code, Section 841(a)(1) (Count Six); and money laundering conspiracy, in violation of Title 18, United States Code, Sections 1956(h) (Count Seven).

.

3.    Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

4.    Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the superseding indictment: Count One, which charges defendant with conspiracy to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 846; and Count Seven, which charges defendant with money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h).  In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.    Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Seven of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

2

a.      With respect to Count One of the superseding indictment:

Beginning no later than in or about September 2019, and continuing until at least in or about September 2023, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant RICARDO TELLO did conspire with Oswaldo Espinosa, Jorge Borbon-Ochoa, Rodolfo Rizzo-Ramon, Abraham Arechiga Santillan, Jesus Leonel Camacho-Vera, Jose Isaias Martinez, Eliem Linares, Paulina Torres, Ahmad Collins, Martin Herrera-Fernandez, Sebastian Vazquez-Gamez, Sergio Blas-Hernandez, and Rodrigo Jimenez-Perez, and with others known and unknown, to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), in violation of Title 21, United States Code, Section 846, and Title 18, United States Code, Section 2.

More specifically, beginning in approximately September 2019, at Espinosa's request and on his behalf, TELLO started flying to different locations in the United States to pick up bulk cash drug proceeds, which TELLO then flew back to the Chicago area. Espinosa paid TELLO $3,500 per pickup. In addition to flying bulk cash drug proceeds, Espinosa directed TELLO to drive and meet with people to receive or distribute bulk cash drug proceeds. For example, on or about November 26, 2019, at Espinosa's direction, TELLO delivered approximately $299,530 to an

3

individual who, unbeknownst to TELLO, was an undercover law enforcement officer in Hillside, Illinois.

When TELLO first started transporting cash for Espinosa, TELLO thought the cash was legitimate. TELLO later realized the cash was the proceeds of criminal activity. TELLO eventually came to understand that the cash was from the proceeds of drug sales. TELLO transported drug proceeds for Espinosa until approximately March 2020.

Beginning sometime around February 2021, and no later than February 8, 2021, TELLO became aware that Espinosa was trafficking cocaine, and that he used rolls of commercial plastic sheeting to smuggle cocaine into the United States and to transport cocaine within the United States for distribution. On February 8, 2021, TELLO traveled to a warehouse in the Chicago area where TELLO observed individuals who worked for Espinosa unloading kilograms of cocaine from the plastic rolls. TELLO subsequently helped Espinosa in his drug-trafficking operation by collecting the plastic rolls after the drugs had been removed and shipping them back into Mexico. TELLO exported about 48 loads of plastic rolls for Espinosa in this way.

In or about September 2021, TELLO traveled to Toluca, Mexico, at the request of Espinosa. While there, TELLO went to a warehouse with Espinosa and others, and TELLO saw there were a lot of the plastic rolls. TELLO was aware that Espinosa previously had someone else put the cocaine into the plastic rolls for him, but at the warehouse he told TELLO that he wanted to start doing it himself. However,

4

Espinosa said he did not know how the drugs were hidden in the rolls, and he asked TELLO to explain. So, TELLO explained to Espinosa how TELLO observed them hidden in the rolls when TELLO saw them at the warehouse in February 2021. Espinosa told TELLO he had 100 kilograms of cocaine, and he was going to start doing test runs with the rolls.

At times, TELLO served as an intermediary between Espinosa and others within the course of the conspiracy. For example, on multiple occasions, TELLO facilitated travel by Martin Herrera-Fernandez to locations in the Midwest to transport proceeds on behalf of Espinosa.

TELLO acknowledges that the total amount of cocaine involved in the conspiracy that was reasonably foreseeable to him and for which he is accountable was at least 450 kilograms.

      b.    With respect to Count Seven of the superseding indictment:

Beginning no later than in or about September 2019, and continuing until in or about March 2021, at Chicago, in the Northern District of Illinois, and elsewhere, RICARDO TELLO did knowingly conspire with Oswaldo Espinosa, Jorge Borbon-Ochoa, Rodolfo Rizzo-Ramon, Abraham Arechiga Santillan, Jesus Leonel Camacho-Vera, Jose Isaias Martinez, Eliem Linares, Elvin Shtayner, Paulina Torres, Ahmad Collins, Raul Navarrete-Gomez, Marin Herrera-Fernandez, Uriel Arias Cardenas, Glenis Zapata, Ilenis Zapata, Georgina Banuelos, and with persons known and unknown, to commit offenses in violation of Title 18, United States Code, Section

5

1956, namely (a) to knowingly conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, namely, the felonious buying and selling and otherwise dealing in a controlled substance, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); (b) to knowingly conduct a financial transaction affecting interstate and foreign commerce, namely, the exchange of United States currency at a financial institution, which involved the proceeds of a specified unlawful activity, that is, the felonious buying and selling and otherwise dealing in a controlled substance, knowing that the transaction was designed in whole and in part to avoid a transaction reporting requirement under Federal law and that while conducting such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii); (c) to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such

6

transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, namely, the felonious buying and selling and otherwise dealing in a controlled substance, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i); and (d) to knowingly engage in a monetary transaction in and affecting interstate commerce in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, namely, the felonious buying and selling and otherwise dealing in a controlled substance, in violation of Title 18, United States Code, Section 1957.

Specifically, as described above in paragraph 6(a), beginning in approximately September 2019, TELLO transported bulk cash proceeds for ESPINOSA by plane and car. TELLO received $3,500 per pickup. For example, on or about November 26, 2019, at Espinosa's direction, TELLO delivered approximately $305,230 to an individual who, unbeknownst to TELLO, was an undercover law enforcement officer in Hillside, Illinois.

When TELLO first started transporting cash for Espinosa, TELLO thought the cash was legitimate. TELLO soon realized the cash was the proceeds of criminal activity, and TELLO eventually came to understand that the cash was from the proceeds of drug sales. TELLO knew the transactions were designed to conceal and disguise the nature, location, source, ownership, and control of the proceeds. TELLO

7

transported drug proceeds for Espinosa until approximately March 2020. In total, TELLO transported at least approximately $9,000,000 for Espinosa.

### **Maximum Statutory Penalties**

7.      Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.      Count One carries a maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of 10 years. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation on this count. Count One also carries a maximum fine of $10,000,000. Defendant further understands that with respect to Count One the judge also must impose a term of supervised release of at least five years, and up to any number of years, including life.

b.      Count Seven carries a maximum sentence of 20 years' imprisonment. Count Seven also carries a maximum fine of $500,000, or twice the value of the property involved, whichever is greater. Defendant further understands that with respect to Count Seven, the judge also may impose a term of supervised release of not more than three years.

c.      Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty imposed.

8

d.     Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is life imprisonment, and the minimum sentence is 10 years' imprisonment. In addition, defendant is subject to a total maximum fine of $10,500,000, or $10,000,000 plus twice the value of the property involved in Count Seven, whichever is greater, a period of supervised release, and special assessments totaling $200.

## Sentencing Guidelines Calculations

8.     Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9

9.    For purposes of calculating the Sentencing Guidelines, the government's position is as follows:

a.    **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 1, 2024 Guidelines Manual.

b.    **Offense Level Calculations**.

<u>Count One</u>

i.    The base offense level is 38, pursuant to Guideline §§ 2D1.1(a)(5) and 2D1.1(c)(1), because the amount of controlled substances involved in the offenses of conviction for which defendant is accountable is at least 450 kilograms of cocaine.

ii.    Based on the evidence now known to the government, the parties agree, subject to the Court's approval, that Guideline § 5C1.2 and Title 18, United States Code, Section 3553(f) are applicable, and that the Court shall impose a sentence without regard to any statutory minimum sentence, and the offense level shall be reduced by two levels, pursuant to Guideline § 2D1.1(b)(18).

<u>Count Seven</u>

10

iii.    The base offense level is 26, pursuant to Guideline § 2S2.1(a)(2), because the value of the laundered funds was more than $3,500,000 but less than $9,500,000.

iv.    Pursuant to Guideline § 2S1.1(b)(2)(A) and Application Note 3(c) to Guideline § 2S1.1, the offense level is increased by 2 levels because the defendant was convicted of a conspiracy under 18 U.S.C. § 1956(h) and an offense under 18 U.S.C. § 1957 was not the sole object of the conspiracy.

<u>Grouping of Counts One and Seven</u>

v.    Each count of conviction constitutes a separate group pursuant to Guideline § 3D1.2.

vi.    Pursuant to Guideline § 3D1.4, defendant receives 1 unit for the offense enumerated in Count One. Pursuant to Guideline § 3D1.4(a), because Count Seven has an offense level that is 5 to 8 levels less serious, that offense counts as one half unit. Because there are 1.5 units, 1 level is added to the group with the highest offense level, resulting in a combined offense level of 37.

vii.    The government understands that defendant will truthfully admit the conduct comprising the offense(s) of conviction, and truthfully admit or not falsely deny any additional relevant conduct for which the defendant is accountable under Guideline § 1B1.3. Therefore, based upon facts now known to the government, defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does

11

not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

       viii.    In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

       ix.    Based on the facts now known to the government, defendant does not receive any criminal history points from Chapter Four, Part A, and otherwise meets the criteria set forth in Guideline § 4C1.1(a). Therefore, the offense level is decreased by 2 levels.

       c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 32 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 121 to 151 months' imprisonment, in addition to any supervised release and fine the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of 10 years' imprisonment.

e. Defendant and his attorney and the government acknowledge that the guidelines calculations set forth in this Agreement are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands the above calculations are based on information now known to the government and that further review of the facts or applicable legal principles may lead the government to change its position on the guidelines calculations. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the defendant's, the probation officer's, or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of a change in the government's position on the guideline calculations or the Court's rejection of these calculations.

13

f.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors by a statement to the Probation Office or the Court, setting forth any changes in either parties' position regarding the guidelines calculations. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

10.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

11.     Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

12.     After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the superseding indictment, as well as the indictment as to defendant.

14

## Forfeiture

13.     Defendant understands that, by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense, any property used or intended to be used, in any manner or part, to commit or facilitate commission of the offense, and any property involved in the offense.

14.     Defendant agrees to forfeiture of the following specific property to the United States: One 1973 Cessna 182P, Serial # 18261748, Tail # N78092. In doing so, defendant admits that the property represents property used or intended to be used, in any manner or part, to commit or facilitate commission of the offense. Defendant also agrees to the immediate interlocutory sale of this plane.

15.     To satisfy, in part, the personal money judgment, discussed below, defendant agrees to forfeiture of the following specific property to the United States:

   a.     One 18K Rose Gold Presidential Rolex (SN: 1148L3N8);

   b.     One Men's Rolex Datejust (SN: 884447Y7);

   c.     One Cartier Love Bracelet Yellow Gold;

   d.     One 18K Rose Gold Daytona Rolex (SN: 59QC9717);

   e.     One MS Frank Muller Vanguard Watch (SN: DM19.1/71)

   f.     One Big Bang Camo Yohji Yamamoto (SN:1676290);

   g.     One Ladies Rolex Oyster Perpetual 28MM (SN: 441471C2); and

        h.      One Ladies Rolex Datejust 31MM (SN:36099426).

16.    In doing so, defendant admits that the property described above constitutes substitute assets available to partially satisfy the personal money judgment.

17.    Defendant consents to the immediate entry of a preliminary order of forfeiture as to the specific property described in paragraphs 18 and 19, thereby extinguishing any right, title, or interest defendant has in it. If any of the specific property is not yet in the custody of the United States, defendant agrees to seizure of that property so that it may be disposed of according to law.

18.    Defendant agrees to the entry of a personal money judgment in the amount of $297,699.50, which constitutes proceeds traceable to, and property involved in, the offense. Defendant consents to the immediate entry of a preliminary order of forfeiture setting forth the amount of the personal money judgment he will be ordered to pay.

19.    Defendant admits that because the directly forfeitable property is no longer available for forfeiture as described in Title 21, United States Code, Section 853(p)(1), the United States is entitled to seek forfeiture of any other property of defendant, up to the value of the personal money judgment, as substitute assets pursuant to Title 21, United States Code, Section 853(p)(2).

20.    Defendant understands that forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

21.    Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

## Acknowledgments and Waivers Regarding Plea of Guilty

## Nature of Agreement

22.    This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 23 CR 426-3.

23.    This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other

17

federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

24.     Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a

18

reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

        iv.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

        v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

        vi.      At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

        vii.      At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

        b.      **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to

trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

25.     Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

26.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall endeavor to ensure that the relevant facts and sentencing factors, as applied to the facts, are brought to the District Court's attention fully and accurately, including facts related to the defendant's criminal conduct and related conduct, and any relevant information concerning the defendant's background, character, and conduct that the District Court may consider under 18 U.S.C. § 3661 in imposing a sentence.

27.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information,

20

may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

28. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

29. Defendant agrees to cooperate with the United States Attorney's Office in collecting any ordered fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

21

30.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

31.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

32.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

22

33.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

34.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

35.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 9/15/25

/s/ Rick D. Young
Signed by Rick D. Young on behalf of
ANDREW S. BOUTROS
United States Attorney

RICARDO TELLO
Defendant

ANDREW C. ERSKINE
Assistant U.S. Attorney

CARLOS VERA
DANIEL YUKICH
Attorney for Defendant